ROBERT BLUE v. JIM G. LOXTON, ALSO KNOWN AS JAMES G. LOXTON, AND ANOTHER.
WARREN SPANNAUS, ATTORNEY GENERAL, INTERVENOR.

223 N. W. 2d 129.

October 25, 1974—No. 44106.

*Marino, Becker & Granquist, Bernard P. Becker,* and *Stephen D. Swanson,* Legal Aid Society, Inc., for appellants.

*Richard C. Smith* and *P. Nadine James,* for respondent.

*Warren Spannaus,* Attorney General, *Curtis D. Forslund,* Solicitor General, and *Gilbert S. Buffington,* Special Assistant Attorney General, for intervenor.

Heard before Knutson, C. J., and Otis, Peterson, MacLaughlin, and Yetka, JJ., and considered and decided by the court en banc.

OTIS, JUSTICE.

This is an appeal by defendants Loxton from a judgment of the district court in the sum of $945 arising out of a collision between their automobile and a vehicle in which plaintiff, Robert Blue, was riding. Plaintiff's claim was discharged in bankruptcy proceedings instituted by defendants. The issue is whether the posting of a bond for $945 by defendants to secure the reinstatement of their driver's licenses revived plaintiff's tort claim. The trial court held in favor of plaintiff, and we reverse.

The accident out of which these proceedings arose occurred on February 21, 1970. In March, this action was begun by plaintiff to recover from defendants damages for personal injuries. On April 20, 1970, defendants filed a petition in bankruptcy list-

ing plaintiff's claim in their schedule of unsecured creditors. They were discharged in bankruptcy on November 13, 1970, at which time defendants executed a bond for $500 in compliance with Minn. St. 170.25, subd. 1. In February 1971, defendants posted an additional bond for $445. The Supreme Court of the United States on June 1, 1971, held unconstitutional an Arizona statute similar to § 170.33, subd. 5, in Perez v. Campbell, 402 U. S. 637, 91 S. Ct. 1704, 29 L. ed. 2d 233 (1971). Minn. St. 170.33, subd. 5, provides:

"A discharge in bankruptcy shall not relieve an individual from any of the requirements of this chapter." (Safety Responsibility Act.)

Following the Perez decision, the commissioner of highways of the State of Minnesota no longer required the posting of a bond, as directed by § 170.27(1), in lieu of proof of financial responsibility in order to reinstate the driving privileges of a person whose tort liability has been discharged in bankruptcy proceedings.

After their discharge, defendants amended their answer to interpose the bankruptcy proceedings as a defense and moved for summary judgment. The trial court denied the motion and set the matter down for trial. In so doing, the court stressed that defendants have not directly attacked the constitutionality of § 170.33, subd. 5, but have voluntarily complied with the statute by filing bonds in the sum of $945. The court concluded that defendants had revived plaintiff's tort claim to the extent of the face amount of the bonds. Thereafter, the case was tried by the court without a jury, and judgment against defendants in the sum of $945 was entered in favor of plaintiff.

The bonds filed by defendants were in the following form:

"MOTOR VEHICLE SAFETY RESPONSIBILITY BOND—SUBMITTED IN SUPPORT OF MOTION
RESOLUTE INSURANCE COMPANY
Hartford, Connecticut
"MOTOR VEHICLE SAFETY RESPONSIBILITY BOND

"NOT VALID UNLESS SIGNED BY ATTORNEY-IN-FACT AND A SEPARATE NUMBERED POWER OF ATTORNEY IS ATTACHED TO THIS BOND.

"SURETY BOND TO BE FILED AS SECURITY UNDER STATE OF MINNESOTA MOTOR VEHICLE RESPONSIBILITY LAW PURSUANT TO PROVISIONS OF MINNESOTA STATE STATUTES

"KNOW ALL MEN BY THESE PRESENTS, that I (we)

James G. Loxton    of    308 9th St. S.E. Mpls
    Principal            Address

Mary Beth Loxton    of    308 9th St. S.E. Mpls
    Principal            Address

as principal(s), and RESOLUTE INSURANCE COMPANY, a corporation organized under the laws of Rhode Island having its principal office at Hartford, Connecticut, and being duly authorized to transact business in the State of Minnesota, as Surety, are held and firmly bound unto the STATE OF MINNESOTA, in the sum of FOUR HUNDRED FORTY FIVE DOLLARS ($445.00) lawful money of the United States of America for the benefit of any person who shall recover a judgment against the principal(s) for damages arising out of the accident hereinafter mentioned in an action in a court of the State of Minnesota begun not later than one year after 2/9/71, for which payment, well and truly to be made we bind ourselves, our heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

"Whereas, the principal(s) was (were) notified to furnish security in the amount above named to satisfy judgment for damages resulting from an accident in which a vehicle owned or operated by the principal was involved on the 21 day of February, 1970, at Minneapolis, Minnesota 28th & Central N.E. Case No. 0052157

"NOW THEREFORE, the condition of this obligation is such that if within sixty days, providing no appeal is taken, the principal(s) shall satisfy every judgment that may be recovered against him for damages resulting from said accident in an action in a court of the State of Minnesota, begun not later than

one year after Feb. 9, 1971, then this obligation to be void, otherwise to remain in full force and effect.

"IN WITNESS WHEREOF the RESOLUTE INSURANCE COMPANY has caused this bond to be signed by its Attorney-In-Fact hereunto authorized by the attached numbered Power of Attorney, and its corporate seal hereunto to be affixed at the time of execution.

"RESOLUTE INSURANCE COMPANY
By s/ Ray Chisholm
   Attorney-In-Fact

(Corp. Seal)

Executed this 9th day of February, 1971
                              s/ James G. Loxton
                                   Principal
Executed this 9th day of February, 1971
                              s/ Mary Beth Loxton
                                   Principal"

In essence, defendants argue that the undertaking does not run to plaintiff but to the State of Minnesota; that it is conditioned on the satisfying of any judgment arising out of the accident and that such judgment has been discharged by bankruptcy; that the bond is not a liability policy, and if paid by the surety defendants remain liable to the surety for the face amount; and that the bond, in any event, was not a voluntary revival, but posted under duress to preserve defendants' driving privileges.

It is the contention of plaintiff, on the other hand, that the bond complies with Minn. St. 513.01(4), which requires that the revival of a discharged debt be in writing; that the trial court has made a finding of fact that the revival was voluntary; that defendants were under no obligation to post a bond, but could have elected to forego their driving privileges, and no resulting hardship has been demonstrated; that this is a collateral attack on the statute, and no measures have been taken to secure a license from the commissioner; and finally, in oral argument,

defendants assert their claim is against the surety rather than the principals on the bond. As to the last contention, however, it is enough to say that the surety is not a party to the action.

We are not persuaded by the argument that defendants had a duty to meet the constitutional question head-on by direct attack on the validity of § 170.33, subd. 5. It is undisputed that they were persons without means, without liability insurance, and resorted to bankruptcy to resist plaintiff's tort claim. The realities were that they did not have the resources to challenge the statute to a determination at an appellate level. In the current era of motor transportation, we can take judicial notice of the hardship intrinsic in the denial of driving privileges to ordinary working people. When these bonds were posted by defendants, Perez had not been decided. In order to constitute a valid revival of a debt discharged by bankruptcy, there must be an expression of a voluntary intention. It is fundamental that a discharge in bankruptcy "destroys the remedy but not the indebtedness" and leaves the debtor "under a moral obligation that is sufficient to support a new promise to pay the debt." Zavelo v. Reeves, 227 U. S. 625, 629, 33 S. Ct. 365, 367, 57 L. ed. 676, 678 (1913). It is equally basic that under the supremacy clause the state may not, by statute, supersede the protection of constitutionally adopted Federal statutes.[1]

We have held that to revive a claim discharged in bankruptcy the language used must be "clear and unequivocal, and express a distinct intention to recognize payment of the debt." Smith v. Stanchfield, 84 Minn. 343, 345, 87 N. W. 917, 918 (1901). The evidence of a "distinct, unconditional, and present promise to pay" must be strong, positive, and unequivocal. Pearsall v. Tabour, 98 Minn. 248, 108 N. W. 808 (1906).

Because the commissioner of highways is no longer enforcing

[1] U. S. Const. art. VI, provides in part: "This Constitution, and the laws of the United States which shall be made in pursuance thereof, and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land, and the judges in every state shall be bound thereby, anything in the Constitution or laws of any state to the contrary notwithstanding."

434

§ 170.33, subd. 5, our decision has little precedential value, and an extended discussion of the issues is therefore not in order. It is sufficient to say that, in the light of Perez, it seems clear that the commissioner of highways would not have threatened defendants with the loss of their driving privileges had Perez been decided when defendants posted their bonds. For the reasons we have indicated, we cannot agree that the execution of the bonds constituted a "clear and unequivocal" intention to revive defendants' tort liability. The doctrine of revival is sometimes referred to as an equitable concept. Where, as here, a bond is posted under compulsion pursuant to what is clearly an unconstitutional statute, we hold that defendants' action in providing the bond was not truly voluntary and that it would be inequitable to construe their so doing as an intention to revive their tort liability to plaintiff. Accordingly, the judgment of the district court is reversed.

Reversed.

MR. CHIEF JUSTICE SHERAN, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.